IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANNAH D., <br><br> Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | **8:25-CV-00431** <br><br><br> **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |

Plaintiff Hannah D.[1] seeks judicial review of the denial of her application for disability insurance benefits by Defendant Commissioner of the Social Security Administration. Filing 1 at 2. Hannah D. has moved for an order reversing the Commissioner's decision. Filing 13. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 16 at 1. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Hannah D.'s motion to reverse.

## I. INTRODUCTION

### A. Procedural Background

Hannah D. applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, on November 7, 2022. Filing 7-2 at 12 (Administrative Record (AR) 11). Hannah D. alleged an onset disability date of March 15, 2022. Filing 7-2 at 12 (AR 11). Hannah D.'s claim was denied initially on September 15, 2023. Filing 7-2 at 12 (AR 11). Her claim was denied upon reconsideration on January 5, 2024. Filing 7-2 at 12 (AR 11).

---

[1] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

Hannah D. filed a written request for a hearing on February 1, 2024, pursuant to 20 C.F.R. § 404.929 *et seq*. Filing 7-2 at 12 (AR 11). The Administrative Law Judge (ALJ) held a telephone hearing to review the denial of Hannah D.'s application on June 20, 2024. Filing 7-2 at 12 (AR 11). On July 2, 2024, the ALJ issued a ruling in favor of the Commissioner. Filing 7-2 at 23 (AR 22). Hannah D. requested a review of the ALJ's decision, and on April 29, 2025, the Appeals Council issued an order denying her request for review. Filing 7-2 at 28 (AR 27). Hannah D. filed this action seeking judicial review and reversal of the ALJ's decision to deny her disability benefits, or in the alternative, to vacate and remand this matter for further proceedings, and to award attorney's fees. Filing 1 at 2.

### B. Factual Background

#### 1. *The Claimant and Her Alleged Disabilities*

Hannah D. was twenty-five years old at the time of the alleged disability onset date, March 15, 2022, classifying her as a younger individual (age 18–49) pursuant to 20 C.F.R. § 404.1563 and 20 C.F.R. § 416.963. Filing 7-2 at 22 (AR 21). Hannah D. is classified as having a limited education pursuant to 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964 because the highest grade of school she completed is 9th grade. Filing 7-2 at 22 (AR 21); Filing 7-6 at 32 (AR 231). Hannah D. lives with her mother and fiancé. Filing 7-2 at 50 (AR 49). The ALJ determined that Hannah D. has not engaged in substantial gainful employment since March 15, 2022, the alleged onset date. Filing 7-2 at 14 (AR 13). Hannah D. alleged in her disability report the conditions that limit her ability to work are the following: stigmatism, gastroparesis, depression, anxiety, obsessive-compulsive disorder (OCD), post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), chronic back pain, restless leg syndrome, fibromyalgia, and chronic migraines. Filing 7-6 at 31 (AR 230).

Hannah D. avers three general bases in support of her motion for an order to reverse the Commissioner's decision. First, Hannah D. argues the Commissioner erred by "playing doctor." Filing 13-1 at 9 (reduced from all capitals). Second, she contends the Commissioner erred by not conducting a proper consistency analysis of PA-C Amanda Millemon's opinion. Filing 13-1 at 9. Third, Hannah D. maintains the Commissioner erred by failing to build a logical bridge between her testimony and her residual functional capacity (RFC). Filing 13-1 at 9. The Court will provide a focused statement of the medical records and other evidence relevant to Hannah D.'s challenges to the ALJ's decision.

### 2. *Medical Records and Evidence*

#### a. Treating Physicians' Opinions of Hannah D.'s Symptoms

On May 26, 2021, Hannah D. saw Dr. Benjamin Rowley for an initial psychiatric evaluation. Filing 7-7 at 56 (AR 387). Hannah D. reported feeling "severely depressed in the last 4 months." Filing 7-7 at 56 (AR 387). Dr. Rowley noted that Hannah D. "admit[ted] to only intermittent compliance with medication." Filing 7-7 at 56 (AR 387). Her active medications included Abilify 7 mg daily, Buspar 7.5 mg daily, Lexapro 10 mg daily, and Atarax 25 mg qHS PRN. Filing 7-7 at 56 (AR 387). Dr. Rowley commented that Hannah D. "appear[ed] stated age, alert, cooperative, casually dressed, good hygiene, good grooming." Filing 7-7 at 62 (AR 393). He also noted Hannah D. had a steady gait. Filing 7-7 at 62 (AR 393). Dr. Rowley's assessment plan included increasing Hannah D.'s Lexapro prescription to 20 mg and taking Buspar BID instead of once daily. Filing 7-7 at 63 (AR 394).

Hannah D. visited Dr. Rowley on July 7, 2021, for a follow-up appointment. Filing at 7-7 at 64 (AR 395). During a patient interview, Dr. Rowley commented Hannah D. "reports they have been doing well overall. Mood is good." Filing 7-7 at 64 (AR 395). Dr. Rowley increased Hannah

D.'s Buspar prescription to 15 mg BID and recommended she continue taking her additional medication. Filing at 7-7 at 67 (AR 398).

On September 1, 2021, Dr. Rowley saw Hannah D. at a follow-up appointment and wrote that she "[r]eports doing well. Some situational anxiety- will be starting a new job tomorrow as a CNA at a nursing home. Has a new boyfriend, a friend of hers for many years. Mood overall positive and tolerating medication." Filing 7-7 at 68 (AR 399). Dr. Rowley recommended that Hannah D. maintain her "current med regimen." Filing 7-7 at 71 (AR 402).

Hannah D. saw nurse practitioner student Kasey Napper on October 5, 2021. Filing 7-7 at 31 (AR 362). Hannah D. reported vomiting "2-3 times per day." Filing 7-7 at 31 (AR 362). Napper's visit diagnosis was "[v]iral gastroenteritis." Filing 7-7 at 33 (AR 364). Her treatment plan included a "[b]land diet and advance as tolerated." Filing 7-7 at 33 (AR 364).

On November 3, 2021, Hannah D. visited Dr. Rowley and reported "severe anxiety" and "panic attacks." Filing 7-7 at 73 (AR 404). Subsequently, Dr. Rowley engaged Hannah D. in a 20-minute psychotherapy session. Filing 7-7 at 75 (AR 406). The goals of the session included "[i]dentify[ing] cognitive distortions and develop[ing] techniques to improve positive thinking." Filing 7-7 at 75 (AR 406). Dr. Rowley recorded that Hannah D. "will d/c [L]exapro and start [Z]oloft. Not going to use a stimulant but may consider something in the future. She can take [A]tarax prn during the day for panic. I advised she needs to take [B]uspar at least twice a day for it to be effective." Filing 7-7 at 76 (AR 407).

On February 23, 2022, Hannah D. visited Janeen Gass, PA-C, reporting gastroparesis symptoms and ankle pain. Filing 7-7 at 34-35 (AR 365-66). The physical examination and review of Hannah D. revealed generalized abdominal tenderness and depressed mood. Filing 7-7 at 35 (AR 366). Gass recorded that Hannah D. had not been taking her psychiatric medications due to

4

poor memory, but Hannah D. knew that "she would feel better if she could take her meds regularly." Filing 7-7 at 34 (AR 365). Gass's treatment plan entailed a continuation of the ongoing treatment for Hannah D.'s gastroparesis and major depressive disorder. Filing 7-7 at 35-36 (AR 366-67). Gass noted that she "[s]tressed [the] importance of taking meds daily," and she "[d]iscussed with [the] pt[.] setting [an] alarm and putting meds in [a] pill box." Filing 7-7 at 36 (AR 367).

Hannah D. went to the Methodist Women's Hospital emergency room on February 26, 2022, and saw Dr. Anke Horacek. Filing 7-7 at 145 (AR 476). Hannah D. complained that she had been "vomiting 'all day'" due to gastroparesis. Filing 7-7 at 145 (AR 476). Dr. Horacek reported that "[Hannah D.] is currently not taking Bentyl at home. [E]ven though it is on her list of medications." Filing 7-7 at 145 (AR 476). Dr. Horacek noted, "Patient feels better after [D]roperidol and Bentyl. Labs are unremarkable. Her vital signs have been stable. On reexamination, her abdomen is now nontender." Filing 7-7 at 146 (AR 477).

Hannah D. visited PA-C Gass on March 22, 2022, with pain present in her thoracic spine radiating into her left hip. Filing 7-7 at 37 (AR 368). Hannah D.'s symptoms were "aggravated by bending, lying down, sitting, twisting, position and standing." Filing 7-7 at 37 (AR 368). Gass found that spasms were present and causing thoracic back pain on the left side of Hannah D.'s back. Filing 7-7 at 39 (AR 370). For the back pain, Gass referred Hannah D. to physical therapy, recommended heat compressions, and prescribed Flexeril 10 mg one to three times a day as needed. Filing 7-7 at 40 (AR 371). On this visit, Hannah D. also complained of frequent vomiting due to gastroparesis. Filing 7-7 at 37 (AR 368). Gass noted that Hannah D. "doesn't always follow the diet" recommended to her. Filing 7-7 at 37 (AR 368). For the gastroparesis issues, Hannah D. was referred to gastroenterology. Filing 7-7 at 40 (AR 371).

Dr. Rowley discharged Hannah D. from his care on January 18, 2023, for "not return[ing] or was not responsive to outreach requests." Filing 7-7 at 77 (AR 408). Several months later, on August 29, 2023, Hannah D. saw Dr. Holly Filcheck for a psychological report examination. Filing 7-7 at 89 (AR 420). Dr. Filcheck observed:

> She wore casual clothing that was appropriate for the situation and weather . . . Her hygiene was adequate . . . She had no apparent physical disorders . . . Hannah was cooperative during the interview. She understood the purpose of the interview was for social security disability benefits. Her eye contact was good, and her speech was appropriate and easy to understand.

Filing 7-7 at 89 (AR 420). Dr. Filcheck wrote, "Her emotional reactions were appropriate during the evaluation. She reported that her mood typically is 'pretty good.'" Filing 7-7 at 91 (AR 422). Dr. Filcheck believed Hannah D's memory was average based on her evaluation. Filing 7-7 at 91 (AR 422). Dr. Filcheck described Hannah D.'s functioning capacity as follows:

> Hannah's daily activities include: spending time with her fiancé, taking care of her dogs, laundry, taking care of the cat, dishes, reading, watching television, and household chores. She appears to have no restriction of activities of daily living due to mental health issues. Hannah appears to have no difficulty maintaining social functioning due to mental health. She appears to have no significant difficulty remembering simple and complex instructions and could complete tasks [without] normal supervision. She would be able to get along with co-workers and supervisors. Hannah's concentration and attention appears to be slightly below average, likely due to anxiety. When stressed, she appears to have worsening of symptoms. She would have no difficulty adapting to changes in life or structure.

Filing 7-7 at 92 (AR 423). Dr. Filcheck's diagnosis included recurrent, mild major depressive disorder and unspecified anxiety disorder. Filing 7-7 at 92 (AR 423). Dr. Filcheck recommended that Hannah D. receive mental health therapy. Filing 7-7 at 92 (AR 423).

On October 9, 2023, Hannah D. followed-up with PA-C Gass. Filing 7-7 at 115 (AR 446). Gass reported Hannah D. "is doing ok[,] well with her mood on the medication." Filing 7-7 at 115 (AR 446). Hannah D. did report "occasional restless leg symptoms." Filing 7-7 at 115 (AR 446).

In response to this report, Gass ordered blood work "to evaluate symptoms." Filing 7-7 at 120 (AR 451).

On December 6, 2023, Hannah D. visited Dr. Whitney Haase with complaints of cervicalgia, low back pain, and thoracic spine pain. Filing 7-7 at 213 (AR 544). Dr. Haase's self-care recommendations included "avoid[ing] activities that aggravate condition, performing home exercises as directed, and be[ing] mindful of postural/positional awareness." Filing 7-7 at 214 (AR 545). Dr. Haase's in-office treatments included the following:

> [S]pinal manipulative therapy to address joint restriction and pain and diagnoses related to pain, therapeutic exercises and strength training to address diagnoses related to pain, soft tissue overuse, and balance and coordination, and manual therapy, electrical stimulation, and dry needle trigger point therapy to address diagnoses related to pain and soft tissue overuse.

Filing 7-7 at 214 (AR 545). Hannah D.'s response to the dry needling was positive as it increased her function and range of motion and decreased the intensity of her pain. Filing 7-7 at 215 (AR 546).

Marie-Josee Ganiev, APRN, conducted a psychiatric evaluation of Hannah D. on February 19, 2024. Filing 7-7 at 220 (AR 551). Ganiev's diagnoses included unspecified mood (affective) disorder, generalized anxiety disorder, history of self-reported ADHD, and a history of PTSD. Filing 7-7 at 227 (AR 558). Additionally, Ganiev ruled out borderline personality disorder and schizoaffective disorder. Filing 7-7 at 227 (AR 558). Ganiev wrote, "I would like to mention that cannabis use is also a problem due to its impact on . . . memories, anxiety, and so forth." Filing 7-7 at 227 (AR 558). Ganiev also noted that Hannah D.'s gait was steady. Filing 7-7 at 226 (AR 557). Ganiev's treatment plan included starting Duloxetine 20 mg at night for mood and anxiety, Propranolol 20 mg twice daily for anxiety, and transitioning to an injection of Ablify 300 mg every

28 days. Filing 7-7 at 228 (AR 559). She also recommended therapy for Hannah D. Filing 7-7 at 228 (AR 559).

   b. Self and Lay Assessments of Hannah D.'s Functionality

Hannah D. completed a function report on April 14, 2023, for use by the Social Security Administration in considering her application for disability benefits. In her report, Hannah D. claimed her ability to work is limited due to frequent vomiting, anxiety, weakness, poor memory, and trouble staying on task. Filing 7-6 at 66 (AR 265). She wrote that these limitations prevent her from leaving the house. Filing 7-6 at 66 (AR 265). She noted that her abilities are limited, referencing issues with memory, concentration and understanding, ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and following instructions. Filing 7-6 at 71 (AR 270). These particular items, Hannah D. claimed, are affected by physical limitations, ADHD, anxiety, and depression. Filing 7-6 at 71 (AR 270). She wrote that she is able to do laundry, put dishes in the dishwasher, feed the dogs and let them out, and feed the cats. Filing 7-6 at 68 (AR 267). She stated she needs reminded to do these tasks with a chore chart. Filing 7-6 at 68 (AR 267). Hannah D. claimed she prefers not to drive due to anxiety, preferring to be driven. Filing 7-6 at 69 (AR 268). She wrote that her conditions affect her personal care because she often stays in pajamas throughout the day, showers less than she used to, puts her hair up frequently, shaves less, eats one meal a day and snacks, and described use of the toilet as "OK but have bowel issue[,] constipation & Dia[…]rr[h]ea." Filing 7-6 at 67 (AR 266).

On April 8, 2023, Hannah D.'s mother, Laurie R., completed a third-party function report on behalf of Hannah D. regarding limitations to her abilities. Laurie R. reported that her daughter's memory, capacity to complete tasks, concentration, and ability to follow instructions have been affected by her conditions. Filing 7-6 at 59 (AR 258). She wrote that Hannah D.'s conditions affect

each of the above items due to Hannah D.'s anxiety, depression, fibromyalgia, ADHD, poor memory, reduced concentration, and difficulty following instructions and completing tasks. Filing 7-6 at 59 (AR 258). Laurie R. noted that since Hannah D.'s conditions began, the smell of food triggers nausea and vomiting. Filing 7-6 at 60 (AR 259).

c. Evaluations of Hannah D.'s Medical History by Medical Consultants

Consultative examiner, PA-C Millemon, examined Hannah D. on August 29, 2023. Filing 7-7 at 99 (AR 430). Millemon scored Hannah D. five out of five for her hand grip strength and concluded that Hannah D. had normal ranges of motion and a waddling gait. Filing 7-7 at 97-99 (AR 428-30). Millemon found that Hannah D.:

> did not seem to be in a lot of pain and moved body well with good strength and ROM. Likely would not tolerate a highly physical job due to her chronic pain and gastroparesis and can occasionally do activities but likely would not tolerate a lot of repetitive movements or a lot of exertion. She can stand and walk about 30-60 minutes at a time. She can sit.

Filing 7-7 at 106 (AR 437).

At the initial level of consideration, Hannah D.'s medical records were reviewed by state agency doctor, Dr. Alexandra Suslow-Geditz, on September 14, 2023. Filing 7-3 at 2 (AR 64); Filing 7-3 at 12 (AR 74). Dr. Suslow-Geditz concluded that Hannah D. had an RFC consistent with medium work. Filing 7-3 at 9 (AR 71). Dr. Suslow-Geditz's report stated that Hannah D. has exertional limitations, can occasionally lift and/or carry up to 50 pounds, and can frequently lift and/or carry up to 25 pounds. Filing 7-3 at 9 (AR 71). Dr. Suslow-Geditz concluded that Hannah D. can stand and/or walk with normal breaks for a total of "[a]bout 6 hours in an 8 hour workday" and can sit with normal breaks for a total of "[a]bout 6 hours in an 8 hour workday." Filing 7-3 at

9 (AR 71). Dr. Suslow-Geditz decided that Hannah D. has a "Med[.] RFC due to Clmt's gastroparesis, obesity, and fibromyalgia." Filing 7-3 at 9 (AR 71).

Dr. Steve Arkin reviewed Hannah D.'s records on January 5, 2024, at the reconsideration level. Filing 7-3 at 22 (AR 84); Filing 7-3 at 31 (AR 93). Dr. Arkin concluded that Hannah D. had an RFC consistent with medium work. Filing 7-3 at 29 (AR 91). Dr. Arkin's report stated that Hannah D. has exertional limitations, can occasionally lift and/or carry up to 50 pounds, and can frequently lift and/or carry up to 25 pounds. Filing 7-3 at 29 (AR 91). He found that Hannah D. can stand and/or walk with normal breaks for a total of "[m]ore than 6 hours on a sustained basis in an 8 hour workday" and can sit with normal breaks for a total of "[m]ore than 6 hours on a sustained basis in an 8 hour workday." Filing 7-3 at 29 (AR 91). Dr. Arkin decided that Hannah D. has a "Med[.] RFC due to obesity, report of migraine,[2] and report of gastroparesis with minimal if any abnormalities noted on exams as well as minimal if any needed treatment." Filing 7-3 at 29 (AR 91). Dr. Arkin additionally explained:

> She reports a hx of gastroparesis and this is noted in the MER from her PCP however she does not follow the diet for this and is seen quite infrequently for any physical concerns. No evidence of astigmatism. She reports chronic back pain however has been seen for this rarely and this was due to muscle spasm and not chronically limiting. Migraine and RLS noted but do not require ongoing treatment. Past hx of fibromyalgia but again no recent tx. Per recon she reports increase in vomiting however updated MER from her PCP shows no mention of this. BMI > 47 and this appears to be her only chronic impairment causing any sort of limitation. Waddling gait noted at CE. With continued treatment and compliance with treatment it is reasonable to assume her symptoms will at least remain stable if not improve. Claimant appears capable of medium exertion work as outlined above. Claimant's reported level of severity is, at best, partially consistent with the other evidence in file. Affirm initial determination.

---

[2] In her disability report, Hannah D. reported that she suffers from chronic migraines. Filing 7-6 at 31 (AR 230). However, the ALJ dismissed this claim, writing that "migraines are indicated by history, but the claimant did not receive treatment for them during the period of adjudication, nor does she report these occurring with a frequency, duration, or severity that would affect her ability to function." Filing 7-2 at 15 (AR 14).

10

Filing 7-3 at 29 (AR 91).

            d.   Hannah D.'s Personal Testimony at the ALJ Hearing

On June 20, 2024, the ALJ held a telephone hearing to review Hannah D.'s case. Filing 7-2 at 46 (AR 45). Hannah D. testified that she stopped working in March of 2022, due to frequent vomiting. Filing 7-2 at 51 (AR 50). Her last job was at a Casey's gas station. Filing 7-2 at 51-54 (AR 50-53). Beginning in February of 2024, Hannah D. testified that she started seeing a psychiatrist. Filing 7-2 at 52 (AR 51). She did not see anyone for counseling from March of 2022 through January of 2024. Filing 7-2 at 52 (AR 51). Hannah D. attributed not seeing a counselor or psychiatrist during this period to loss of insurance because of a delay in applying for Medicaid. Filing 7-2 at 52 (AR 51). The delay in application was a product of being "fed up with the medical system." Filing 7-2 at 52 (AR 51). She reported that she takes Clonidine for anxiety and Hydroxyzine, mostly for sleep.[3] Filing 7-2 at 54-55 (AR 53-54). Hannah D. also takes Abilify, in addition to her antidepressant, for mood stabilization. Filing 7-2 at 55 (AR 54). Regarding the gastroparesis, Hannah D. testified, "I still have nausea and vomiting, but that's just something I live with now and it's something I've learned to deal with." Filing 7-2 at 56 (AR 55). She testified that she "can handle just my gastroparesis alone, but then I have this extreme anxiety when it comes to interacting with strangers." Filing 7-2 at 54 (AR 53). She said that she is nauseous or vomiting "[e]very other day to every three days." Filing 7-2 at 56 (AR 55). She claimed that during an eight AM to five PM shift, on a bad day, she would probably vomit "three to five times," and vomiting in the bathroom takes her about 20 minutes. Filing 7-2 at 57-58 (AR 56-57). She noted that with Zofran she can delay vomiting "for a couple hours, but I end up puking anyway." Filing

---

[3] In her disability report, Hannah D. reported that she was actively taking Hydroxyzine, prescribed by CHI Health. Filing 7-6 at 34 (AR 233). However, she did not report that she was actively taking Clonidine. *See* Filing 7-6 at 34 (AR 233).

11

7-2 at 58 (AR 57). Regarding mobility, Hannah D. testified that she can stand for 30 minutes to an hour before having to take a break and can sit 20 minutes before having to change positions. Filing 7-2 at 59 (AR 58). She stated that she drives occasionally if needed. Filing 7-2 at 61 (AR 60).

      3.      *The ALJ's Impairment Findings*

Under 20 C.F.R. § 416.920(b), an ALJ will follow a "'five-step process for considering disability claims.'" *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider the following during that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Id.* (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled at step five. 20 C.F.R. §§ 416.912(a)-(b), 416.960(c)(2). If the ALJ finds the claimant is not disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant is not disabled if the claimant is working and that work is considered substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." *Id.* at (a). Gainful work activity is defined as "work activity that you do for pay or profit." *Id.* at (b). In this case, the ALJ determined Hannah

D. had not engaged in substantial gainful activity since her alleged onset date of March 15, 2022. Filing 7-2 at 14 (AR 13). The ALJ proceeded to the next step of the analysis.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If an ALJ finds the claimant's medically determinable impairment or combination of impairments is not severe, the claimant is not disabled. *Id.* In this case, the ALJ determined Hannah D.'s medically determinable gastroparesis, obesity, major depressive disorder, and generalized anxiety disorder are severe. Filing 7-2 at 15 (AR 14). On the other hand, the ALJ determined that Hannah D.'s reports of migraines, fibromyalgia, and restless leg syndrome did not amount to severe impairments. Filing 7-2 at 15 (AR 14). The ALJ determined that the record did not indicate that the symptoms of restless leg syndrome affected Hannah D.'s functioning. Filing 7-2 at 15 (AR 14). Regarding the fibromyalgia, the ALJ noted that the claimant did not exhibit tenderness at the consultative examination and was not seen for fibromyalgia during the period of adjudication. Filing 7-2 at 15 (AR 14). The ALJ found that Hannah D.'s migraine symptoms were not treated during the period of adjudication nor would they "affect her ability to function." Filing 7-2 at 15 (AR 14). The ALJ also determined that the record did not reveal a diagnosis for the reports of lower back pain, rendering it a non-medically determinable impairment. Filing 7-2 at 15 (AR 14). The impairments of OCD, PTSD, and ADHD, prompted the ALJ to acknowledge "the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses." Filing 7-2 at 15 (AR 14). As a result, the ALJ considered Hannah D.'s psychological symptoms together. Filing 7-2 at 15 (AR 14).

13

At the third step of the process, the ALJ will ascertain whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does meet the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See Id*. The ALJ found that none of Hannah D.'s impairments, individually or in combination, are of a severity to meet the listed criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1, which prompted the ALJ to proceed to step four of the analysis. Filing 7-2 at 15 (AR 14).

### 4.    The ALJ's RFC Findings

At step four of the five-step analysis, the ALJ will first determine the claimant's RFC, then assess the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is her ability to do physical and mental work despite limitations from her impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Id.*; *see also* 20 C.F.R. § 404.1545(a). The ALJ concluded the following pertaining to Hannah D.'s RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can perform simple tasks; and she can have occasional contact with the public and coworkers.

Filing 7-2 at 17 (AR 16).

Following the ALJ's determination of the claimant's RFC, the claimant's RFC will be compared to their past relevant work. 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity claimant performed within the past five years or five years prior to the date disability must be established, and that substantial gainful activity lasted long enough for the claimant to learn to do the work. 20 C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R § 416.965(a). If the claimant has the RFC to do her past relevant work the ALJ will conclude the claimant is not disabled and the analysis ends, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f). Here, the ALJ determined the claimant is unable to perform any past relevant work, including work as a CNA, pizza maker, or order filler. Filing 7-2 at 21 (AR 20).

At the fifth and last step of the disability analysis, the ALJ considers the claimant's RFC, age, education, and work experience to determine if the claimant is capable of adjusting to other work. 20 C.F.R. § 404.1520(a)(4)(v). Once a claimant proves her inability to do past relevant work, the burden of proof switches from the claimant to the Commissioner to establish that the claimant possesses an RFC to do other work and that the other work exists in substantial numbers in the national economy, though this burden is limited, and the claimant still bears the ultimate burden of persuasion to establish she is disabled. *Goff*, 421 F.3d at 790 (internal citation omitted); *see also* 20 C.F.R § 404.1560(c). If the claimant can make an adjustment to other work that exists in the national economy, the ALJ will find the claimant is not disabled. 20 C.F.R. § 404.1520(g). Conversely, if the claimant cannot adjust to other work or that other work does not exist in the national economy, the ALJ will find the claimant is disabled. *Id*.; *see generally* 20 C.F.R. § 404.1566. In determining a claimant's ability to adjust to other work and if other work exists in the national economy, an ALJ may call on a vocational expert (VE) to testify at the administrative

15

hearing. *Id.* at (e). The VE's role is "'to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment.'" *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)).

In the present case, VE Sheel testified that a hypothetical individual of Hannah D.'s age, education, and RFC could perform the positions of photocopy machine operator, sorter, and marker. Filing 7-2 at 62-63 (AR 61-62). The ALJ found the VE's "testimony is consistent with the information contained in the Dictionary of Occupational Titles." Filing 7-2 at 23 (AR 22). Therefore, the ALJ found that Hannah D. was not disabled.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

A Social Security claimant must proceed through four levels of administrative review, including an Appeals Council review of the ALJ's decision, before the claimant may obtain judicial review in federal district court. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). Once at the federal district court level, the court will "decide whether the [ALJ]'s findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "'Substantial evidence [on the record as a whole] is less than a preponderance of the evidence'" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'" *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotations omitted)). "'Substantial evidence in the record as a whole' is a more rigorous standard than simply 'substantial evidence'" since the former standard requires consideration of evidence that supports

or detracts from the ALJ's determination, whereas the latter does not. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (cleaned up and internal quotations omitted) ("Substantial evidence in the record as a whole" is a more "rigorous" standard than simply "substantial evidence," which is "evidence that a reasonable mind might accept as adequate to support the Commissioner's conclusion.")). The district court "will not reverse the [ALJ]'s decision merely because [the court] find[s] that 'substantial evidence exists in the record that would have supported a contrary outcome.'" *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (quoting *Schmitt*, 27 F.4th at 1358) (internal quotation omitted)). Rather, "'[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff*, 421 F.3d at 789).

Additionally, the district court must determine whether the ALJ's decision "'complies with the relevant legal standards.'" *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citation omitted)). "'Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law.'" *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (where the ALJ committed legal error by not posing a hypothetical question to the VE) (omission in original)). "'In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination.'" *Dols*, 931 F.3d at 744 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B.  Discussion

Hannah D. asserts three grounds for reversing and remanding the ALJ's decision. First, Hannah D. argues the Commissioner erred as a matter of law by "playing doctor." Filing 13-1 at 9 (reduced from all capitals). Second, Hannah D. contends the Commissioner erred as a matter of law "by failing to conduct a proper consistency analysis of PA-C Millemon's opinion." Filing 13-1 at 9 (reduced from all capitals). Third, Hannah D. maintains the Commissioner erred as a matter of law "by failing to build an accurate and logical bridge between the plaintiff's testimony and the residual functional capacity." Filing 13-1 at 9 (reduced from all capitals).

### 1.    The ALJ Properly Considered the Medical Record

#### a.   The Parties' Arguments

Hannah D. contends the ALJ's RFC finding was in error because the ALJ "play[ed] doctor." Filing 13-1 at 10. Specifically, Hannah D. argues the ALJ erred by finding "the two state agency doctors' opinions not persuasive, and the physician assistant's opinion 'only persuasive to the extent that it establishes greater exertional limitations than found by the state agency consultants.'" Filing 13-1 at 10 (citing Filing 7-2 at 20 (AR 19)). Hannah D. also contends, "[T]he ALJ found PA-C Millemon's opinion persuasive only to the extent that it agrees with the RFC he formulated from playing doctor." Filing 13-1 at 12. As a result, Hannah D. maintains, "[T]he ALJ – without any medical expertise – formulated an RFC not from a medical opinion, but from his own interpretation of medical records." Filing 13-1 at 12-13. Hannah D. argues that an RFC with a limitation to light work is not supported by her medical record because she "did not testify about her ability to stoop, crouch, or lift." Filing 13-1 at 15. Hannah D. maintains that the ALJ's analysis of the medical record was inconsistent in that "the ALJ rejected the opinions of the state agency's consultants because the record supported '**greater restrictions**' while on the other hand the ALJ

18

rejected a more restrictive opinion because [of] the '**overall normal findings**' in the record."

Filing 13-1 at 12 (emphasis in the original). Hannah D. included in her brief that "'[t]he law of this

circuit . . . states that the ALJ must not substitute his opinions for those of the physician.'" Filing

13-1 at 10 (quoting *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990) (internal citation omitted)).

In response, Defendant argues:

> An RFC determination is not a medical opinion, but an administrative assessment, based on all of the record evidence. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Therefore, it is the ALJ, not a physician or other medical source, who is responsible for determining the claimant's RFC. See Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004); 20 C.F.R. §§ 404.1520b(c)(3)(v), 416.920b(c)(3)(v). Faced with several conflicting evaluations of Plaintiff's RFC, the ALJ resolved the conflicting evidence and found Plaintiff was more limited than suggested by the prior administrative medical findings (PAMFs), but less limited than suggested by other sources in the record.

Filing 17 at 3.

> b.   The ALJ Did Not "Play Doctor"

Defendant's response is correct in that "the determination of the RFC is an issue reserved

for the Commissioner, and in determining that RFC, the ALJ is required to consider all of the

relevant medical and nonmedical evidence, including the claimant's own testimony." *Featherstone*

*v. Colvin*, No. 13-CV-6559, 2016 WL 147655, at *6 (N.D. Ill. Jan. 13, 2016) (internal citations

omitted). Furthermore, "an ALJ is only impermissibly 'playing doctor' when she builds an RFC

based on unsupported assumptions instead of relevant evidence." *Id.* (internal citation omitted).

When there are inconsistent conclusions that can be drawn from the evidence and the ALJ's

decision is consistent with one of the possible conclusions then the ALJ's decision must be

affirmed. *See Dols*, 931 F.3d at 744 ("'If, after reviewing the record, the court finds it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the

19

ALJ's findings, the court must affirm the ALJ's decision'") (quoting *Goff*, 421 F.3d at 789)). If the ALJ's conclusion is consistent with one of the possible conflicting positions, "'[i]t is not the role of this court to reweigh the evidence presented to the ALJ. . . .'" *Id*. at 746 (quoting *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Yet, "'[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion.'" *Schmitt*, 27 F.4th at 1360 (quoting *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (internal quotation and citation omitted)). Using the record, "[a]n ALJ can use objective medical evidence to support the decision to discredit a claimant's subjective complaints." *Keck v. Saul*, No. 8:18CV476, 2020 WL 3868874, at *11 (D. Neb. July 9, 2020) (internal citation omitted).

The ALJ did not "play doctor." ALJs are permitted to draw "reasonable inferences." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (noting that "our case law permits the ALJ's reasonable inferences" when upholding an ALJ's determination that a claimant's credibility was lessened due to the inconsistency between his subjective claims and objective evidence within the record (internal citations omitted)). An ALJ "'may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Further, "[t]he opinion of a treating physician can be discounted if other assessments are supported by better or more thorough medical evidence." *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (citing *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir. 1986)); *see Kraus v. Saul*, 988 F.3d 1022, 1024 (internal citations omitted); *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (internal citation omitted); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (conclusory

opinions do not compel a finding of disability); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The ALJ found that the opinions of the state agency medical consultants were "support[ed] with thorough analyses. . . . However, evidence received at the hearing level, including the claimant's testimony at her hearing, is more consistent with greater exertional restrictions in the above residual capacity." Filing 7-2 at 20 (AR 19). The ALJ believed that the opinion of PA-C Millemon was "not fully supported by the associated narrative, which does not demonstrate any significant abnormalities in the claimant's physical functioning." Filing 7-2 at 20 (AR 19). Therefore, the ALJ found Millemon's opinion to be "not fully consistent with the overall evidence of the record. . . . Thus, this opinion is only persuasive to the extent that it establishes greater exertional limitations than found by the state agency consultants." Filing 7-2 at 20 (AR 19). Given the conflicting opinions of Arkin, Suslow-Geditz, and Millemon, and the fact that their opinions are inconsistent with all, or at least parts, of the record, the ALJ could discount the opinions of the medical experts as "inconsistent with the medical record as a whole." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (internal citation omitted); s*ee Finch*, 547 F.3d at 938 (internal quotation omitted).

The ALJ also built the RFC based upon relevant evidence. The ALJ discounted the opinions of the state agency medical consultants because of testimony given during the hearing that supported greater restrictions than a medium work RFC. Filing 7-2 at 20 (AR 19). A medium work RFC requires far longer periods of walking and standing; in fact, "'[t]here are very few medium occupations in the national economy performed primarily in a seated position.'" Filing 13-1 at 13 (citing POMS DI § 25001.001(A)(47), (43)). Because of the more strenuous

21

expectations of a medium work RFC, the ALJ was permitted to reject the state agency medical consultants' opinions given Hannah D.'s testimony and her extensive medical record.

The ALJ discounted PA-C Millemon's opinion as inconsistent with "the associated narrative" and "the overall evidence of record." Filing 7-2 at 20 (AR 19). For example, Millemon noted that Hannah D. "could not tolerate a lot of repetitive movements." Filing 7-2 at 20 (AR 19); *see* Filing 7-7 at 106 (AR 437). However, Millemon's examination concluded that Hannah D. had normal ranges of motion. Filing 7-7 at 97-99 (AR 428-30). Millemon found that Hannah D. "did not seem to be in a lot of pain and moved [her] body well with good strength and ROM." Filing 7-7 at 106 (AR 437). The ALJ properly concluded that a light work RFC was appropriate.

The light work RFC classification includes occasional stooping, crouching, sitting, and standing "'performed primarily in one location with the ability to stand being more critical than the ability to walk.'" Filing 13-1 at 13 (citing POMS DI § 25001.001(A)(47), (43)). The ALJ's finding of a light work RFC must have some basis in the record. The record demonstrates that the ALJ had specific reasons for choosing a light work RFC, concluding that Hannah D.'s BMI is "indicative of obesity. . . . Given these findings, the claimant would reasonably be limited to light work." Filing 7-2 at 19 (AR 18). Hannah D. addressed her weight, saying, "I think it does cause me quite a bit of limitations." Filing 7-2 at 49 (AR 48). Additionally, Hannah D.'s contention that her vomiting is unrelated to her abilities to "stoop, crouch, lift and carry, and stand and sit" is clearly unconvincing as she claims she goes to the bathroom for 20 minutes when she has to vomit. Filing 13-1 at 16-17 (citing Filing 7-2 at 57 (AR 56)). During this time, she is clearly limited in the above abilities. Hannah D. argues that a finding of an excessive absences provision in her RFC would be more appropriate due to "gastroparesis-induced vomiting." Filing 13-1 at 14. To receive an excessive absences provision, "A plaintiff must point to medical evidence or opinion evidence

22

demonstrating that either her impairment or treatment of said impairment would require her to be consistently absent from work a significant portion of the day." *Chelsea B. v. Kijakazi*, No. 21-CV-1248 (DSD/LIB), 2022 WL 3648673, at *5 (D. Minn. July 27, 2022), *report and recommendation adopted*, No. CV 21-1248 (DSD/LIB), 2022 WL 3647803 (D. Minn. Aug. 24, 2022) (internal citations omitted). Hannah D. said on a "bad day" she would likely vomit three to five times during normal work hours. Filing 7-2 at 58 (AR 57). If Hannah D. takes 20 minutes for each vomiting incident, then she would be absent for 60 to 100 minutes during a normal shift. *See* Filing 7-2 at 57 (AR 56). This amount of time is not on par with missing the majority of a workday, rendering Hannah D. unable to receive an excessive absences provision. Even if the 60 to 100 minutes was sufficient, Hannah D.'s testimony is tainted as she has admitted in the past that she does not always follow her recommended gastroparesis diet. Filing 7-2 at 19 (AR 18) (citing Filing 7-7 at 37 (AR 368)).

The ALJ made a reasonable inference, given the record and PA-C Millemon's conflicting opinion, that Hannah D. should be limited to light work. Medium and light work classifications have stark differences, and the ALJ's reasonable inference towards a more restricted classification was based on Hannah D.'s own testimony. The ALJ justified this finding by crediting Millemon's opinion to the extent that it demonstrated greater limitations than the state medical agency consultants, finding Filcheck's opinion "generally persuasive," and finding Ganiev's opinion persuasive in so far as it aligns with a light work RFC classification. Filing 7-2 at 20-21 (AR 19-20). The ALJ accounted for Hannah D.'s testimony in finding a light work RFC appropriate. For example, Hannah D. said she can "handle just my gastroparesis alone, but then I have this extreme anxiety when it comes to interacting with strangers." Filing 7-2 at 54 (AR 53). However, she conceded that she has always had the anxiety "and coped with it," and the jobs she has worked in

23

the past five years have required her to deal with people. Filing 7-2 at 54 (AR 53). Hannah D. said she "was just trying to step down my job to try to not deal with people as much, but it's hard to find jobs like that." Filing 7-2 at 54 (AR 53). Yet, the VE provided three SVP 2, light jobs, including non-interactive jobs like photocopy machine operator. Filing 7-2 at 62 (AR 61). Additionally, she stated that she has not "seen a gastroenterologist recently" because they will reiterate what they have told her in the past, including "Hannah, it's your diet." Filing 7-2 at 58 (AR 57). The ALJ was justified in assessing this statement in relation to the whole record given that Hannah D. does not always follow her recommended diet. Filing 7-7 at 37 (AR 368). Hannah D. also stated, "I'm trying to be better about going to doctors and things," implicitly conceding that she has struggled with accountability before. Filing 7-2 at 55 (AR 54). The ALJ drew "reasonable inferences," crediting the testimony despite its contradictions. *Bradley*, 528 F.3d at 1115.

Hannah D. fails to recognize that light work can include: "sitting most of the time with some pushing and pulling of arm or leg controls." POMS DI § 25001.001(A)(43). PA-C Millemon wrote that Hannah D. "can sit." Filing 7-7 at 106 (AR 437). Hannah D. argues that a limitation of sedentary work may have been more appropriate, but a light work job could entail sitting rather than standing, making the ALJ's determination reasonable. Filing 13-1 at 15. The ALJ properly considered the conflicting medical evidence and the record as a whole. The ALJ did not "play doctor."

  2.    *The ALJ Properly Evaluated PA-C Millemon's Opinion*

Hannah D. argues that the ALJ erred "by failing to conduct a proper consistency analysis of PA-C Millemon's opinion." Filing 13-1 at 21 (reduced from all capitals). Hannah D. maintains that "[t]he ALJ must explain how he 'considered the supportability and consistency factors for a

24

medical source's medical opinions or prior administrative medical findings in [the] determination or decision.'" Filing 13-1 at 22 (citing 20 C.F.R. § 404.1520c(b)(2)). Hannah D. contends, "The consistency factor requires the ALJ to assess whether the 'opinion [is] consistent with the other evidence of record.'" Filing 13-1 at 22 (quoting *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021)). Hannah D.'s first subpoint is that "the consistency analysis is conclusory." Filing 13-1 at 23. Second, Hannah D. argues that "the ALJ's discussion completely ignores abnormalities that are consistent with PA-C Millemon's opinion that Hannah D. 'could stand and walk 30-60 minutes at a time.'" Filing 13-1 at 24 (citing 7-2 at 20 (AR 19)).

Importantly, "'[i]t is not the role of this court to reweigh the evidence presented to the ALJ. . . .'" *Dols*, 931 F.3d at 746 (quoting *Cox,* 495 F.3d at 617 (internal quotation omitted)). As to a consistency analysis, "[t]he paragraph concerning the ALJ's evaluation of [a subjective] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, No. 1:20 CV 51 DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). First, applying this form of analysis, reading the entire ALJ decision, the consistency analysis is not conclusory. The ALJ compares PA-C Millemon's opinion to other evidence in the record, which he described earlier in his decision. The ALJ noted that Millemon determined that Hannah D. "could not tolerate a lot of repetitive movements or a lot of exertion, and could stand and walk 30-60 minutes at a time." Filing 7-2 at 20 (AR 19); *see* Filing 7-7 at 106 (AR 437). However, the ALJ noted that throughout the record "[Hannah D.] is generally observed to be in no distress and to have full range of motion, normal strength, intact sensation, and a steady gait." Filing 7-2 at 19 (AR 18). Millemon's opinion was thus inconsistent with other evidence in the record. Because "an ALJ's explanation need not be exhaustive," the ALJ's conclusion was

25

supported by substantial evidence. *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal citation omitted).

Second, the reports of a single instance of muscle spasms and one visit to a chiropractor are not supported by Millemon's findings, let alone the comprehensive record. Again, Millemon reported, "[Hannah D.] did not seem to be in a lot of pain and moved [her] body well with good strength and ROM." Filing 7-7 at 106 (AR 437). An examination of Hannah D.'s thoracic/lumbar spine revealed it was "nontender to palpation with full ROM." Filing 7-7 at 105 (AR 436). Lastly, Millemon found that Hannah D. had normal ranges of motion. Filing 7-7 at 97-99 (AR 428-30). The ALJ's finding was clearly consistent with the record, as a whole.

> 3. *The ALJ Adequately Built an Accurate and Logical Bridge Between Hannah D.'s Testimony and the RFC*

Hannah D. last argues that "the commissioner erred as a matter of law by failing to build an accurate and logical bridge between the plaintiff's testimony and the residual functional capacity." Filing 13-1 at 9; 26 (reduced from all capitals). Specifically, she argues the ALJ "did not identify which portions of the Plaintiff's testimony he found inconsistent with the medical evidence in the record," and "in evaluating four medical opinions, the ALJ made references to the Plaintiff's testimony that would lead the reader to believe that the ALJ found some portions of the Plaintiff's testimony credible." Filing 13-1 at 28. Hannah D. relies on *Draper*, which states, "While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal citations omitted).

The ALJ undertakes a two-step process for evaluating an applicant's symptoms. 20 C.F.R. §§ 404.1529 and 416.929. At step one, the ALJ determines whether the applicant has a medically determinable impairment that could "reasonably be expected to produce [his or her] symptoms." 20 C.F.R. §§ 1529(b) and 416.929(b). At step two, the ALJ evaluates the "intensity and persistence of [the applicant's] symptoms, such as pain, and determin[es] the extent to which [the applicant's] symptoms limit [his or her] capacity for work." *Id*. at (c) and (c). In making this decision, objective medical evidence is considered. *Id*. at (c)(2) and (c)(2). The ALJ must also consider what the applicant's "medical sources or nonmedical sources provide about [the applicant's] pain or other symptoms" when assessing the "intensity and persistence of [the applicant's] symptoms." *Id*. at (c)(3) and (c)(3).

The Eighth Circuit Court of Appeals in *Polaski v. Heckler* established that the ALJ must additionally consider certain factors relevant to alleged symptoms. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors created a standard for an ALJ's evaluation of a Social Security applicant's subjective complaints, requiring the ALJ to consider all evidence relating to the following factors: "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)); *see Polaski*, 739 F.2d at 1322. However, "An ALJ need not expressly cite the *Polaski* factors when . . . the judge conducts an analysis pursuant to 20 C.F.R. § 416.929, because the regulation 'largely mirror[s] the *Polaski* factors.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)); *see* 20 C.F.R. § 416.929(c)(3)(i)–(iv), (vii).

27

Relating to step one of the subjective symptom analysis, the ALJ found that "[t]he claimant has the following severe impairments: gastroparesis; obesity; major depressive disorder; and generalized anxiety disorder." Filing 7-2 at 15 (AR 14). The second step requires the ALJ to identify "any inconsistencies in the evidence" as "[the applicant's] symptoms . . . will be determined to diminish [his or her] capacity for basic work activities . . . to the extent that [the applicant's] functional limitations and restrictions . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 1529(c)(4) and 416.929(c)(4). The ALJ determined that the above severe impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Filing 7-2 at 18 (AR 17).

One can easily determine the portions of Hannah D.'s testimony that the ALJ found inconsistent by reading the ALJ's decision. The ALJ's decision is not "vague and illogical" if read as a whole. Filing 13-1 at 29. An example of clear inconsistency that the ALJ cites is Hannah D.'s admission that she does not always follow her recommended diet, exacerbating gastroparesis symptoms. Filing 7-2 at 19 (AR 18). Another inconsistency is demonstrated through Hannah D.'s improvement on medication. In October of 2023, she was "doing ok[,] well with her mood on the medication." Filing 7-7 at 115 (AR 446); *see* Filing 7-2 at 19 (AR 18). Yet, in February of 2024, she discussed symptoms related to "mood problems." Filing 7-2 at 19 (AR 18).

"We will defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Schultz*, 479 F.3d at 983 (quoting *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir. 2001) (internal quotation omitted)). Additionally, "any reasonable factfinder, is free to 'credit part of [a] witness' testimony without' necessarily

28

'accepting it all.'" *Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (quoting *Banks v. Chicago Grain Trimmers Assn., Inc.*, 390 U.S. 459, 467, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968)). The ALJ could discount some of Hannah D.'s subjective symptoms while finding some of her testimony credible. The ALJ tailored Hannah D.'s RFC to ensure that his conclusion was consistent with the complete record. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ considered Hannah D.'s ability to engage in ordinary life activities along with other *Polaski* factors. He discussed daily activities and functional restrictions such as persistent fatigue and lack of motivation and addressed Hannah D.'s reaction to psychotropic medications. Filing 7-2 at 19 (AR 18). The ALJ clearly addressed *Polaski* factors. Because the ALJ "'need not explicitly discuss each [*Polaski*] factor,'" the ALJ's analysis is sufficient. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Goff*, 421 F.3d 785, 791 (8th Cir. 2005) (internal quotation and citation omitted)). The ALJ's decision was supported by substantial evidence on the record as a whole.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Hannah D. is not disabled. Accordingly,

IT IS ORDERED that

1. Hannah D.'s Motion for an Order Reversing the Commissioner's Decision, Filing 13, is denied;

2. Bisignano's Motion to Affirm the Commissioner's Decision, Filing 16, is granted;

3. The Commissioner's decision is affirmed;

4. The Court will enter a separate judgment.

Dated this 25th day of June, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge